UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ESTEBAN RAMIREZ, an individual,

    Plaintiff,

v.                                            Case No.:  2:21-cv-307-SPC-MRM

DIVISION 16, LLC,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

Pending before the Court is the parties' Joint Motion for Order Approving Resolution of FLSA Claim, filed on February 18, 2022. (Doc. 49).[1] Plaintiff Esteban Ramirez and Division 16, LLC request that the Court approve the parties' settlement agreement and dismiss the case with prejudice. (Doc. 49 at 6). After careful review of the parties' submission and the record, the Undersigned recommends the joint motion (Doc. 49) be **GRANTED in part and DENIED in part**.

## BACKGROUND

On April 13, 2021, Plaintiff filed a Complaint, asserting one claim under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*. against Defendant for failure to fully compensate Plaintiff for all hours worked in excess of forty hours per

---

[1] Pinpoint page citations for documents refer to CM/ECF pagination.

week. (Doc. 1 at 4-5). Plaintiff, however, does not allege a specific sum of damages in his Complaint. (*See id.*). In his answers to the Court's Interrogatories, however, Plaintiff represents that he is owed a total of $53,050.00 in overtime wages and an equal amount thereto in liquidated damages. (*See* Doc. 23 at 6-7). Defendant filed an Answer on June 7, 2021, denying Plaintiff's allegations and asserting five affirmative defenses. (Doc. 14).

The parties engaged in mediation on September 29, 2021, but the mediation resulted in an impasse. (Doc. 28). The Court subsequently held a preliminary pretrial conference and issued a Case Management and Scheduling Order. (*See* Docs. 38, 39). The parties filed their Joint Motion for Order Approving Resolution FLSA Claim on February 18, 2022. (Doc. 49).

## LEGAL STANDARD

To approve the settlement of FLSA claims, the Court must determine whether the settlement is a "fair and reasonable [resolution] of a bona fide dispute" of the claims raised. *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1355 (11th Cir. 1982); 29 U.S.C. § 216. There are two ways for a claim under the FLSA to be settled or compromised. *Lynn's Food Stores*, 679 F.2d at 1352-53. The first is under 29 U.S.C. § 216(c), providing for the Secretary of Labor to supervise the payments of unpaid wages owed to employees. *Lynn's Food Stores*, 679 F.2d at 1353. The second is under 29 U.S.C. § 216(b) when an action is brought by employees against their employer to recover back wages. *Lynn's Food Stores*, 679 F.2d at 1353. When the employees file suit, the proposed settlement must be presented to the district court for

2

the district court's review and determination that the settlement is fair and reasonable. *Id.* at 1353-54. The Eleventh Circuit has found settlements to be permissible when employees bring a lawsuit under the FLSA for back wages. *Id.* at 1354. Specifically, the Eleventh Circuit held:

> [A lawsuit] provides some assurance of an adversarial context. The employees are likely to be represented by an attorney who can protect their rights under the statute. Thus, when the parties submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought about by an employer's overreaching. If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are in dispute; we allow the district court to approve the settlement to promote the policy of encouraging settlement of litigation.

*Id.*

Applying these standards, the Undersigned analyzes the proposed terms of the settlement agreement below.

## ANALYSIS

### I. Bona Fide Dispute

To begin, the Undersigned finds a bona fide dispute between the parties exists. At base, Plaintiff asserts one claim under the FLSA, alleging that "Defendant failed to accurately record all hours worked by Plaintiff and did not fully compensate Plaintiff for all of their hours worked for Defendant in excess of forty (40) per week."

(*See* Doc. 1 at 4-5; *see also* Doc. 49 at 1-2).[2] Defendant expressly denies these allegations in its responsive pleading and asserts several affirmative defenses. (Doc. 14; *see also* Doc. 49 at 5). Accordingly, the proper focus is whether the terms of the settlement are fair and reasonable.

The Undersigned addresses the monetary terms, attorney's fees, and amendment provision below.

## II.  Monetary Terms

The parties explain that under their settlement, Plaintiff will receive $12,500.00 as payment for back wages and an equal amount in liquidated damages. (Doc. 14 at 5; *see also* Doc. 49-1 at 1-2 ¶ 3(a)-(b)).

To justify the monetary terms of the settlement, the parties agree that the payment to Plaintiff "is a fair and reasonable compromise of his FLSA claims, especially when considering the probability Plaintiff will succeed on the merits, and the range of potential possible recovery." (Doc. 49 at 5). In support, the parties note that in his answers to the Court's interrogatories, Plaintiff alleged that he is entitled to $53,040.00 in unpaid wages. (*Id.* at 4-5). As the parties note, (*see id.*), this amount is comprised of allegations of failure to compensate at one and one-half his regular rate for each hour of overtime worked (totaling $46,800.00), automatic lunch

---

[2] In the joint motion, Plaintiff notes that the Complaint contains a typographical error in that the Complaint alleges that Plaintiff worked as an installation laborer. (*See* Doc. 49 at 2; *see also* Doc. 1). Plaintiff clarifies that he alleges that he worked for Defendant as an electrician. (Doc. 49 at 2). The Undersigned finds that the scrivener's error in the Complaint does not prevent approval of the settlement.

4

deductions (totaling $3,120.00), and failure to compensate for the time spent driving to and from Defendant's warehouse and jobsites (totaling $3,120.00), (Doc. 23 at 6-7). In contrast, Defendant denies these allegations and asserts that it "utilized GPS Time Records and daily worksheets with projects worked to support its position." (*Id.* at 5). Accordingly, Defendant argues that Plaintiff is not owed any additional compensation. (*See id.*).

Based on the representations of counsel and the uncertainty of recovery if the case were to proceed to trial, the Undersigned finds that the agreed upon monetary terms – although significantly less than the amount alleged by Plaintiff – are fair and reasonable under the circumstances. Thus, the Undersigned recommends that the presiding United States District Judge approve the monetary terms of the settlement agreement.

### III. Attorney's Fees and Costs

The settlement agreement specifies that Defendant agrees to pay Plaintiff's counsel "Fifteen Thousand Dollars and Zero Cents ($15,000.00) representing attorneys' fees and costs." (Doc. 49-1 at 3-4 ¶ 3(c)). The agreement makes clear that the portion of the settlement sum attributable to attorneys' fees and costs was "negotiated separate from and without regard to the amount being paid to Plaintiff." (*Id.*). The joint motion represents the same. (*See* Doc. 49 at 5-6).

As United States District Judge Gregory A. Presnell explained in *Bonetti v. Embarq Management Company*:

> [T]he best way to insure that no conflict [of interest between an attorney's economic interests and those of his client] has tainted the settlement is for the parties to reach agreement as to the plaintiff's recovery before the fees of the plaintiff's counsel are considered. If these matters are addressed independently and seriatim, there is no reason to assume that the lawyer's fee has influenced the reasonableness of the plaintiff's settlement.
>
> In sum, if the parties submit a proposed FLSA settlement that, (1) constitutes a compromise of the plaintiff's claims; (2) makes full and adequate disclosure of the terms of settlement, including the factors and reasons considered in reaching [the] same and justifying the compromise of the plaintiff's claims; and (3) represents that the plaintiff's attorneys' fee was agreed upon separately and without regard to the amount paid to the plaintiff, then, unless the settlement does not appear reasonable on its face or there is reason to believe that the plaintiff's recovery was adversely affected by the amount of fees paid to his attorney, the Court will approve the settlement without separately considering the reasonableness of the fee to be paid to plaintiff's counsel.

715 F. Supp. 2d 1222, 1228 (M.D. Fla. 2009).

Moreover, in the joint motion, the parties essentially explain that the amount of attorney's fees is less than counsel's actual lodestar incurred in litigating and that the amount also includes $1,832.00 in costs. (Doc. 49 at 5-6).

Given the procedural posture of the case as well as the parties' representations regarding the amount of fees and costs counsel may be entitled to, the amount of fees and costs appears fair and reasonable. Additionally, based on the parties' representations, the Undersigned finds that the parties agreed upon the attorney's fees and costs without compromising the amount paid to Plaintiff.

6

The Undersigned, therefore, recommends that the presiding United States District Judge find the attorneys' fees fair and reasonable.

## IV. Non-Cash Concessions

The parties' settlement agreement contains two non-cash concessions: (1) a waiver of wage-based claims and (2) an amendment provision. The Undersigned considers each in turn below.

### A.  Release of Wage-Based Claims

The settlement agreement contains a release by Plaintiffs of "any and all claims Plaintiff may have under the [FLSA]." (Doc. 49-1 at 2 ¶ 2). Additionally, in the agreement, Plaintiff acknowledges that the settlement sum is made "in full satisfaction of any and all claims Plaintiff has arising out of or related to the payment of overtime wages during his employment with Defendant." (*Id.* at 7 ¶ 16).

Although general releases in FLSA settlement agreements are problematic, *see Serbonich v. Pacifica Fort Myers, LLC*, No. 2:17-cv-528-FtM-29MRM, 2018 WL 2440542, at *3 (M.D. Fla. May 29, 2018), *report and recommendation adopted*, 2018 WL 2451845 (M.D. Fla. May 31, 2018), these specific provisions are narrowly tailored to release only FLSA claims or claims arising out of or relating to the payment of overtime wages during his employment with Defendant—both of which directly relate to the claim at issue here. In light of the limited nature of these provisions, any concern about broad or general releases does not exist and the settlement may be approved as fair and reasonable. *See Monserrate v. Hartford Fire Ins.*

7

*Co.*, No. 6:14-cv-149-Orl-37GJK, 2016 WL 8669879, at *4 (M.D. Fla. Sept. 23, 2016), *report and recommendation adopted*, 2016 WL 5746376 (M.D. Fla. Oct. 4, 2016) (approving a release that is limited to claims arising under the FLSA).

Thus, the Undersigned finds that this non-cash concession does not preclude approval of the parties' settlement.

### B.     Amendment Provision

The parties' settlement agreement also contains an amendment provision, which provides that "[t]his Agreement may not be modified, altered or changed except upon express written consent of all Parties wherein specific reference is made to this Agreement."  (Doc. 49-1 at 7-8 ¶ 17).

This Court has found that an amendment provision cannot be approved because it "leaves 'the parties free to circumvent *Lynn's Food [Stores]* review through post hoc modifications of an already-approved agreement.'"  *Dexheimer v. Enjoy the City N., Inc.*, No. 6:18-cv-1980-Orl-76EJK, 2020 WL 5822195, at *3 (M.D. Fla. Apr. 13, 2020) (quoting *Dumas v. 1 Amble Realty, LLC*, No. 6:17-cv-765-Orl-37KRS, 2018 WL 5020134, at *3 (M.D. Fla. Mar. 9, 2018)).  For this reason, the Court cannot approve a settlement agreement "that is not in its final form" and has an "opportunity for amendment."  *See id*. at *3 (internal quotation and citation omitted; alteration in original).  Thus, the Undersigned cannot recommend approving a settlement agreement that contains such a provision.  Additionally, the Undersigned

finds that given the nature of the provision, it cannot be re-written in such a way to make it valid.  *See id.*

Importantly, the parties' settlement agreement does contain a severability provision that expressly allows the Court to sever impermissible provisions.  (*See* Doc. 49-1).  Nevertheless, the agreement contains a provision that provides, "[s]hould any of the provisions of this Agreement (other than the Release of Claims provision) be determined to be invalid by a court of competent jurisdiction, the Parties agree that this shall not affect the enforceability of the other provisions of the Agreement."  (Doc. 49-1 at 5 ¶ 9).  Because this provision permits the settlement agreement to be enforced despite the invalidity of a particular provision, the Undersigned finds that the provision implicitly permits the Court to strike the invalid portion and approve the remainder of the agreement.  (*See id.*); *see also United States v. Vein Specialists at Royal Palm Square, Inc.*, No. 2:17-cv-631-FtM-JES-MRM, 2021 WL 3476333, at *5 (M.D. Fla. July 2, 2021), *report and recommendation adopted sub nom. United States ex rel. Cobb v. Vein Specialists at Royal Palm Square, Inc.*, 2021 WL 3076982 (M.D. Fla. July 21, 2021) (using a nearly identical provision to strike an impermissible amendment provision).  Further, because the parties specified that any provision except the release of claims will not affect the enforceability of the agreement as a whole, the Undersigned finds that the severing of the impermissible amendment provision will not materially alter the agreement.  (*See* Doc. 49-1 at 5 ¶ 9).

Ultimately, because the provision cannot be re-written to be valid and the Undersigned recommends that the remainder of the settlement agreement be approved, the Undersigned recommends that the presiding United States District Judge find the portion of the amendment provision that purports to allow the parties to modify the agreement without Court approval invalid, strike it from the proposed agreement, and approve the remainder of the agreement. Such an result promotes the interests of justice as well as the interests of judicial efficiency and economy.

In sum, for the reasons set forth above, the Undersigned recommends that the proposed settlement agreement be approved without the portion of the amendment provision that purports to allow the parties to modify the agreement without Court approval. Thus, the Undersigned recommends that the renewed motion (Doc. 49) be granted in part and denied in part.

## CONCLUSION

Accordingly, the Undersigned **RESPECTFULLY RECOMMENDS** that:

1. The Joint Motion for Order Approving Resolution of FLSA Claim (Doc. 49) be **GRANTED in part and DENIED in part** as set forth below:

   a. The presiding United States District Judge find the portion of the amendment provision that purports to allow the parties to modify the agreement without Court approval (*see* Doc. 49-1 at 7-8 ¶ 17) invalid and recognize it as severed from the agreement; and

      b.      The remainder of the settlement agreement (Doc. 49-1) be approved as a fair and reasonable resolution of a bona fide dispute regarding Plaintiff's FLSA claims.

2.      The Clerk of Court be directed to enter a judgment of dismissal with prejudice, terminate all pending motions, and close the file.

**RESPECTFULLY RECOMMENDED** in Fort Myers, Florida on June 22, 2022.

_____
Mac R. McCoy
United States Magistrate Judge

### NOTICE TO PARTIES

A party has fourteen days from the date the party is served a copy of this Report and Recommendation to file written objections to the Report and Recommendation's factual findings and legal conclusions. 28 U.S.C. § 636(b)(1)(C). A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1. A party wishing to respond to an objection may do so in writing fourteen days from the date the party is served a copy of the objection. The parties are warned that the Court will not extend

11

these deadlines. To expedite resolution, the parties may also file a joint notice waiving the fourteen-day objection period.

Copies furnished to:

Counsel of Record
Unrepresented Parties